UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-408-FDW

| | |
|---|---|
| JUAN ANTONIO PARTIDA-RODRIGUEZ,  )<br>  )<br>   Petitioner,  )<br>  )<br>vs.  )<br>  )<br>  )<br>FRANK PERRY,  )<br>  )<br>   Respondent.  )<br>_____  ) | **ORDER** |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment, (Doc. No. 6); on Petitioner's Motion to Expand the Record, (Doc. No. 10); on Petitioner's Motion for Evidentiary Hearing, (Doc. No. 11); and on Petitioner's Motion to Appoint Counsel, (Doc. No. 12).

**I.     BACKGROUND**

Petitioner is a prisoner of the State of North Carolina, who, on October 6, 2011, in Mecklenburg County Superior Court, was convicted after trial by jury of two counts of trafficking in heroin, two counts of conspiracy to traffic in heroin, and one count of possession with intent to manufacture, sell, or deliver a Schedule I controlled substance (heroin). (Doc. No. 7-6 at 17-18; 52-53). The trial court consolidated the offenses into two judgments and sentenced Petitioner to 70-84 months imprisonment on each judgment, with the sentences to run consecutively. (Id.). On December 18, 2012, the North Carolina Court of Appeals filed an unpublished opinion finding error and vacating one of Petitioner's conspiracy convictions. State v. Partida-Rodriguez, No. COA12-632, 2012 WL 6591545 (N.C. App. Dec. 18, 2012)

1

(unpublished). On March 12, 2013, the trial court re-sentenced Petitioner, vacating one of Petitioner's conspiracy convictions but leaving the sentencing terms of Petitioner's judgments undisturbed. (Doc. No. 7-6 at 50-51). Petitioner was represented at trial and re-sentencing by James Exum and on appeal by Jarvis John Edgerton, IV. (Doc. No. 7-2 at 16; Doc. No. 7-6 at 17-19; 50-53).

On September 3, 2013, Petitioner filed a pro se motion for appropriate relief ("MAR") in Mecklenburg County Superior Court. (Doc. No. 7-6 at 21-38). In his MAR, Petitioner alleged that: (1) his first retained counsel, Brad Butler, was ineffective for failing to convey a plea offer to Petitioner; and (2) Petitioner's sentence violated the Eighth Amendment. (Id.). Mr. Butler had represented Petitioner from August 4, 2010, until December 9, 2010, when Mr. Exum filed an entry of general appearance, which noted that Mr. Exum was replacing Mr. Butler as counsel of record in Petitioner's cases. (Id. at 46; 98). On September 17, 2013, the MAR Court ordered an evidentiary hearing on Petitioner's MAR and appointed the Office of the Public Defender to represent Petitioner. (Id. at 61). The record for the MAR hearing subsequently showed that on September 8, 2010, the prosecutor in Petitioner's case had made written plea offers to Mr. Butler for each of two complaint numbers against Petitioner, which included the following global offer: "If the Defendant pleads guilty to one count of Conspiracy to Traffic in Heroin - Level 1 (10CRS232530), the State will dismiss remaining charges associated with Complaint #10-0707-1254-02 and all charges associated with Complaint #10-0702-1252-02. Pursuant to this plea agreement, the State will recommend the Court sentence the Defendant to the following: 70-84 months active imprisonment." (Id. at 48-49). The plea offer did not have an expiration date. (Id.).

On December 5, 2013, Assistant Public Defender Dean P. Loven filed a memorandum of

law, in which Mr. Loven stated that, after investigating Petitioner's MAR claims, he was unable to argue Petitioner's claims pursuant to the North Carolina Revised Rules of Professional Conduct, but nonetheless requested the court to consider the legal arguments in Petitioner's pro se MAR and to review the matter for prejudicial error. (Id. at 56-60). In his memo, Mr. Loven stated, inter alia, that "[t]he transcript of the March 4, 2011 arraignment indicates the plea offer was transmitted to Petitioner by Mr. Exum." (Id. at 58). Mr. Loven went on to state that "[e]ven if Mr. Butler failed to transmit the plea offer to Petitioner, Petitioner has failed to explain to appointed counsel how this conduct was prejudicial in light of Mr. Exum transmitting the offer to Petitioner on March 4, 2011." (Id.).

On February 6, 2014, Mr. Loven filed a second memorandum of law concerning a request by Petitioner to amend his MAR to allege for the first time that Mr. Exum—as opposed to Mr. Butler, against whom the original ineffective assistance claim was lodged—did not transmit the plea offer to Petitioner. (Id. at 63-65). In his second memo, Mr. Loven stated, inter alia, that he met with Petitioner in a holding cell on December 13, 2013, after the evidentiary hearing on Petitioner's MAR was continued, and that:

> During this interview, Petitioner made allegations concerning the conduct of Mr. Exum, including (1) Mr. Exum did not discuss the plea with Petitioner, (2) the plea discussions in the Courtroom on March 4, 2011, were not properly translated, (3) Mr. Exum did not relay a counter offer to the State, and (4) Mr. Exum did not communicate the original plea offer to Petitioner.
> Counsel for Petitioner has reviewed Petitioner's Affidavit signed December 10, 2013, interviewed Petitioner on December 13, 2013, reviewed the transcripts of the trial and the March 4, 2011, arraignment, and obtained copies of the jail visitation logs. Where a Motion for Appropriate relief is made in superior court by counsel, counsel must certify in writing that there is a sound legal basis for the motion and that it is being made in good faith. N.C. GEN. STAT. § 15A-1420(a)(1)c1. Based on his review of the above mentioned items, the undersigned counsel cannot certify a good faith basis for filing an amendment to the September 3, 2013 Motion for Appropriate Relief based upon claims of ineffective assistance of counsel against Mr. Exum.

3

(Doc. No. 7-6 at 64) (paragraph numbering omitted). Despite the Mr. Loven asserted that he could not assert a good faith basis for amending Petitioner's MAR, Mr. Loven asked the MAR court to review the affidavit signed by Petitioner and dated December 10, 2013, to determine whether Petitioner was entitled to an evidentiary hearing based on his new allegations as to Mr. Exum and to determine whether Petitioner was entitled to appointment of counsel for the claims raised in Petitioner's affidavit. (Id.).

On February 7, 2014, the MAR Court conducted an evidentiary hearing on Petitioner's MAR and Petitioner's affidavit of December 10, 2013. (Doc. No. 7-6 at 70-96: Tr. of Evidentiary Hr'g). At the hearing, Petitioner testified that Mr. Butler did not communicate the State's global plea offer to him at all. (Id. at 75-77). Petitioner also claimed that Mr. Exum did not communicate the State's global plea offer to him at the March 4, 2011, arraignment and that Mr. Exum's paralegal did not translate the prosecutor's recitation of the plea offer at the March 4, 2011, arraignment. (Id. at 81-82). Additionally, Petitioner testified that:

> [A]fter my co-defendant pled guilty, I told him, Mr. Exum – that was like in June – June 6th, I believe, I had another court date – or July. I don't remember. I said, Mr. Exum, my co defendant received 70 to 84 months. Is that what they want to give me as well? He didn't say yes. He said like this (indicating) more or less. That's – you know –
> . . . .
> Never said, you know, Look, here it is; this is what they are offering. He never said, you know, I received the paperwork from your other two attorneys. Here it is. This is what is he (sic) offering. What he said was, You know what? Don't worry about it. I'm going to try to get a better offer. Or, Do you want all that time? That's what he would say. And, you know, what I told him – I was like, I didn't kill anybody. I didn't kill anybody so that they could give me that kind of time. He said, What I'm telling you, they don't have anything against you, no videos, nothing. And he asked me again about my case. Afterwards he asked me, Hey, your co-defendant can do an affidavit, like a statement, in which he says, you know – you know, in which he might say that you didn't have anything to do

4

with this. And I said, Yeah, he could do that.

(Id. at 83-84). Petitioner then produced a document, which Petitioner tendered as, and the MAR court received as, a record of Petitioner's arraignment of March 4, 2011. (Id. at 62; 89-90). According to that record of Petitioner's March 4, 2011, arraignment, the prosecutor recited the terms and conditions of Petitioner's plea offer in open court as follows:

> [T]o plead [guilty] to one count of Conspiracy to Traffic in Heroin, level 1, and the State would dismiss the remaining charges associated with the complaint number dealing with that charge. That would be 10CRS232530 and all charges associated with the other case. And pursuant to that plea agreement, the State would recommend the court sentence the defendant to 70 to 84 months active.

(Doc. No. 7-6 at 62). Also, according to that record of Petitioner's March 4, 2011, arraignment, Mr. Exum responded in open court, "That is correct, your honor, that has been communicated to my client. He is aware of the potential maximum penalty and has advised me that he maintains his innocence and does still plead not guilty." (Id.). After considering the evidence presented at the evidentiary hearing, the items contained in Petitioner's court file, and the arguments of counsel, the MAR Court denied, by order dated May 5, 2014, Petitioner's MAR and the claims raised by Petitioner's affidavit of December 10, 2013. (Id. at 92-93; 98-100).

On June 30, 2014, Petitioner filed a certiorari petition in the North Carolina Court of Appeals, seeking review of the MAR Court's denial. See (Doc. No. 7-5). Petitioner was represented on the certiorari petition by Jillian C. Katz, Assistant Appellate Defender. (Id. at 25). On July 15, 2014, the State filed a response. (Doc. No. 7-7). On July 16, 2014, certiorari was denied. (Doc. No. 7-8). Petitioner placed the instant petition in the prison system for mailing on July 21, 2014, and it was stamp-filed in this Court on July 28, 2014. In the petition, Petitioner contends that: (1) he received ineffective assistance of trial counsel because neither Mr. Butler nor Mr. Exum communicated the State's written plea offer to him; and (2) he received

ineffective assistance of post-conviction counsel because Mr. Loven did not subpoena Mr. Butler, Mr. Exum, or Mr. Exum's paralegal for the MAR evidentiary hearing and argued against Petitioner's position at the evidentiary hearing. Respondent filed the pending summary judgment motion on October 14, 2014. (Doc. No. 6). On October 14, 2014, the Court issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to respond to the summary judgment motion. (Doc. No. 8). On October 30, 2014, Petitioner filed his response to the summary judgment motion, as well as his pending motion to expand the record and motion for evidentiary hearing. (Doc. Nos. 9; 10; 11). Finally, on November 4, 2014, Petitioner filed a motion to appoint counsel. (Doc. No. 12).

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the petition for writ of habeas corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result][.]" Williams v. Taylor, 529 U.S. 362, 405 (2000); Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 U.S. at 405). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." Williams, 529 U.S. at 407; Lewis, 609 F.3d at 300-01 (stating that a state court unreasonably applies federal law when it "extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply[ ]") (citation and quotation marks omitted).

"[A]n unreasonable application of federal law is different from an incorrect application of federal law" for § 2254(d)(1) purposes. Williams, 529 U.S. at 410. The former requires a

"substantially higher threshold" to obtain relief than does the latter. Schiro v. Landrigan, 550 U.S. 465, 473 (2007). A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

A habeas court, therefore, must "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." Richter, 131 S. Ct. at 786. A petitioner has the burden of establishing that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell,

506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

      1.      Petitioner's Claim of Ineffective Assistance of Counsel Based on his Contention that Neither Counsel Butler nor Counsel Exum Communicated the State's Plea Offer to Him

Petitioner first contends that he received ineffective assistance of counsel because he claims that neither Mr. Butler nor Mr. Exum communicated the State's plea offer to him. In support of his claim, Petitioner contends that he would not have gone to trial had he been informed of this plea offer and that he would have accepted the plea. As noted, Petitioner raised the substance of this claim in his MAR, and the MAR Court denied the claim, concluding in pertinent part:

> 1.) Attorney Brad Butler was not the attorney of record at the arraignment on March 4, 2011. Even if Mr. Butler had failed to transmit the plea offer to Petitioner prior to that date, failure to do so did not rise to the level of ineffective assistance of counsel under either the United States or North Carolina Constitutions. 2.) Petitioner was represented by counsel and an interpreter was present at the time of his arraignment and trial. The plea offer was transmitted to Petitioner, and the record does not support Petitioner's assertion that he was not adequately apprised of the offer by Mr. Exum. . . . .
> 4.) There were no violations of North Carolina statutory law, the North Carolina Constitution or the U.S. Constitution.

(Doc. No. 7-6 at 99). For the following reasons, the MAR Court's adjudication of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

9

First, as to any alleged ineffective assistance of counsel Butler, the record of the MAR hearing shows that, even if Butler did not communicate the plea offer to Petitioner, Mr. Butler's actions did not prejudice Petitioner. This is because Mr. Butler ceased being Petitioner's counsel of record on December 9, 2010, when Mr. Exum filed an entry of general appearance. (Doc. No. 7-6 at 45). Mr. Exum's notice of general appearance was made almost three months before Petitioner's arraignment on March 4, 2011. (Id. at 57; 61). Additionally, the written plea offers for complaint numbers 10-0702-125202 and 10-0707-125402 did not have expiration dates on them. (Id. at 47-48). Thus, by its very terms, the State's global plea offer remained unexpired until Petitioner accepted it, rejected it by communicating his rejection to the State, or rejected it by pleading not guilty and proceeding to trial.

As to alleged ineffective assistance by Mr. Exum, the record before the state court at Petitioner's MAR hearing clearly demonstrates that Mr. Exum communicated the global plea offer to Petitioner. The record also supports a finding that, in any event, Petitioner would not have accepted the State's offer because he proclaimed his innocence throughout the proceedings and considered the State's offer to be unacceptable. As discussed, Petitioner's own exhibit at the MAR hearing, which Petitioner presented to the state court as a record of his March 4, 2011, arraignment, shows that the prosecutor recited the terms and conditions of the global plea offer in open court. Additionally, the same exhibit that Petitioner presented to the state court as a record of his March 4, 2011, arraignment contains the affirmative statements of Mr. Exum in open court responding to the prosecutor's recitation of the plea offer: "That is correct, your honor, that has been communicated to my client. He is aware of the potential maximum penalty and has advised me that he maintains his innocence and does still plead not guilty." (Doc. No. 7-6 at 62). The state court obviously considered Mr. Exum's statements on the record in open court more

10

credible than Petitioner's testimony that Mr. Exum did not communicate the State's global plea offer to him. Under 28 U.S.C. § 2254, "'federal courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)) (alteration in original). Rather, "for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." Id. Furthermore, a federal habeas court's review of a state court's denial of an ineffective assistance of counsel claim is "doubly deferential." Harrington, 131 S. Ct. at 786-88. That is, when both § 2254(d) and Strickland apply, the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 788. Here, a reasonable argument obviously exists that counsel satisfied Strickland's deferential standard—i.e., that Mr. Exum communicated the State's global plea offer to Petitioner before or at his arraignment. Considering that Petitioner first claimed that Mr. Exum did not communicate the State's global plea offer to him only after Mr. Loven pointed out that Petitioner's ineffective assistance of counsel claim against Mr. Butler lacked merit, the state court's assessment of Petitioner's credibility was imminently reasonable. See (Doc. No. 7-6 at 55-59; 62-64).

Finally, in addition to the fact that the MAR Court's finding that Mr. Exum did communicate the plea offer to Petitioner was clearly reasonable, even if Mr. Exum had not communicated the plea offer, there is no reasonable probability of a different result because Petitioner maintained his innocence throughout the proceedings, professed his innocence at his first sentencing hearing, and indicated clearly that he would not have accepted the State's global plea offer. At the MAR hearing of February 7, 2014, Petitioner testified that, "I didn't kill anybody. I didn't kill anybody so that they could give me that kind of time [i.e., 70 to 84

11

months]." (Id. at 83). Additionally, Petitioner's testimony about his conversation with Mr. Exum regarding the lack of audio or video recorded evidence against him and the prospect of getting his co-defendant to testify favorably for Petitioner at trial supports the conclusion that Petitioner would not have accepted the State's global plea offer.[1] See (Id. at 83-85). Finally, at Petitioner's first sentencing hearing, Mr. Exum asked the trial court to consider the very recommendation that the State included in its global plea offer:

> Your Honor, what I'm going to request is that the Court consolidate the four trafficking and the possession with intent to selling heroin to one sentence. If the Court does that, he will receive a sentence of 70 months to 84 months. That is a substantial sentence. It, I believe, would be an appropriate sentence. It is a plea offer that he was made, and I say that in the context that I completely understand that when you reject a plea that you are then exposed to the charges that you did not enter a plea. However, when you look at this case and these circumstances, I don't see a scenario particularly where we're dealing with 70 to 84 months, where he should be punished further than that. The co-defendant, who under these particular facts, the evidence will show had the drugs -- the jury certainly reached their verdict. But that individual is serving a sentence of 70 to 84 months. And I think it would be fair if they both had the same sentence.

(Doc. No. 7-9 at 282-83). Even though Petitioner had a certified interpreter at this sentencing hearing, Petitioner addressed the trial court, through his interpreter, immediately after Mr. Exum spoke the words quoted above and said:

> I'm not guilty of anything that I'm being claimed guilty of. I have been here barely two months in this country when I met this particular guy. I gave him my support. It's very difficult to be in this country as an undocumented person. I had asked him and we had offered each other help if we needed each other for something. But at no time did he ever tell me that he was in the business of selling drugs. I'm an architect in my country. I have a degree in architecture. Before I came to this country, it was because of (inaudible). With whatever I made I was only able to support my family and I also needed to help my parents,

---

[1] Petitioner's co-defendant did, in fact, testify for Petitioner at trial. See (Doc. No. 7-9 at 217-26). According to the co-defendant, he had only known Petitioner for a few days when he asked Petitioner for a ride to a pre-arranged drug deal, and Petitioner did not know that the co-defendant was carrying drugs. (Id. at 221-26).

12

> who both suffer from diabetes. That's the reason I came over here. If at any point had it been in my hands not to have come to this country, I wouldn't have, because in my country, I am prepared to make a living. I tried very hard from the jail to try to get the degrees and the transcripts of my studies so that I could prove what I really do. But my mail was always stopped at the jailhouse. I ask you to take that into consideration, to have mercy on me, because I have no guilt.

(Id. at 283-84). Petitioner's proclamation of innocence so soon after Mr. Exum asked the trial court to give Petitioner the same sentence that the State recommended in its global plea offer clearly indicates that Petitioner still considered that sentence to be unacceptable.[2] As the United States Supreme Court has recognized, "a defendant convinced of his or her own innocence may have a particularly optimistic view of the likelihood of acquittal, and therefore be more likely to drive a hard bargain with the prosecution before pleading guilty." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (concluding that the Sixth Circuit Court of Appeals improperly set aside a reasonable state-court determination of fact that trial counsel's advice satisfied Strickland in favor of its own debatable interpretation of the record, given that respondent was claiming innocence and only days away from offering self-incriminating testimony in open court pursuant to a plea agreement involving an above guidelines sentence). Additionally, "[a]lthough a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under Strickland, it may affect the advice counsel gives." Id. Here, the record supports the conclusions that Mr. Exum communicated the State's global plea offer to Petitioner but that Petitioner maintained his innocence and wanted to go to trial. More important for purposes of this Court's habeas review, the MAR Court's adjudication of Petitioner's claim was neither contrary to nor an unreasonable

---

[2] Also, Petitioner's failure to raise an objection or to even act surprised by Mr. Exum's statement that Petitioner had been made a plea offer which would result in a 70 to 84 month sentence flatly contradicts Petitioner's claim that Mr. Exum never communicated the plea offer to Petitioner.

application of clearly established federal law, as determined by the U.S. Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In sum, for the reasons stated herein, Petitioner's first claim is without merit.

2. Petitioner's Claim of Ineffective Assistance from State Post-Conviction Counsel

Petitioner next contends that he received ineffective assistance of post-conviction counsel because Mr. Loven did not subpoena Mr. Butler, Mr. Exum, or Mr. Exum's paralegal for the MAR evidentiary hearing and argued against Petitioner's position at the evidentiary hearing. This contention is without merit. First, to the extent Petitioner is alleging error in the state post-conviction MAR proceeding itself, such error is not cognizable on federal habeas review. See Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008). Next, Petitioner's claim of ineffective assistance of post-conviction counsel is not cognizable on federal habeas review. There is no constitutional right to counsel in post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987). Consequently, there can be no Sixth Amendment deprivation of the effective assistance of post-conviction counsel. Coleman v. Thompson, 501 U.S. 722, 752 (1991).

In sum, for the reasons stated herein, Petitioner's claim of ineffective assistance of post-conviction counsel is without merit.

**IV. CONCLUSION**

For the reasons stated herein, Respondent is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 6), is **GRANTED** and the § 2254 petition is **DISMISSED** with prejudice.

14

2. Petitioner's Motion to Expand the Record, (Doc. No. 10); Petitioner's Motion for Evidentiary Hearing, (Doc. No. 11); and Petitioner's Motion to Appoint Counsel, (Doc. No. 12), are **DENIED**.

3. It is further ordered that, pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: November 5, 2014

Frank D. Whitney
Chief United States District Judge